**RINGLING BROS.–BARNUM & BAILEY COMBINED SHOWS, INC., Plaintiff,**

v.

**B.E. WINDOWS CORPORATION, Defendant.**

No. 96 Civ. 4758 (SAS).

United States District Court,
S.D. New York.

Aug. 1, 1997.

Steven B. Pokotilow, Laura E. Goldbard, Michele P. Schwartz, James A. Shifren, Stroock & Stroock & Lavan, New York City, for Plaintiff.

Theresa M. Gillis, James P. Jeffry, Jones, Day, Reavis & Pogue, New York City, for Defendant.

## AMENDED OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendant B.E. Windows Corporation ("Windows") moves for partial summary judgment dismissing Ringling Bros.-Barnum & Bailey Combined Shows, Inc.'s ("Ringling") claim for an accounting of Windows' profits under § 43 of the Lanham Act, 15 U.S.C. § 1125, and denying a trial by jury. The opinion and order dated July 15, 1997, is hereby withdrawn and replaced by this amended opinion and order.

## I. BACKGROUND

Ringling owns and operates a circus which annually draws 12,000,000 people to 1,000 shows in 95 cities across the United States. See Affidavit of Michael Franks, Vice President of Sales for Ringling, ("Franks Aff.") ¶ 2. Since 1872, Ringling, in the grand tradition of vaudevillian ballyhoo, has called its circus "The Greatest Show on Earth." See Complaint 11; Declaration of Frederick Dahlinger, Jr., Director of the Robert L. Parkinson Library and Research Center at Circus world Museum, Baraboo, Wis., ("Dahlinger Decl.") Ex. 3. Since 1961, Ringling has owned trademarks and service marks for use of the phrase "The Greatest Show on Earth" in its various promotional materials. See Affidavit of Julie Alexa Strauss, Vice President and General Counsel for Ringling, ("Strauss Aff.") ¶ 3. Ringling has never used or authorized use of any variant of "The Greatest Show on Earth," although Ringling has used and authorized the use of the phrase on various non-circus products and promotions, and is considering using the phrase to promote restaurant services in the future. See Complaint ¶ 14; Declaration of Steven B. Pokotilow, attorney for Ringling, ("Pokotilow Decl.") Exs. 1, 2, 5, 6.

Following the 1993 World Trade Center bombing, restaurateur Joseph Baum ("Baum"), of Four Seasons and Rainbow Room fame, won the rights to reopen the restaurant on the 107th floor of One World Trade Center known as "Windows on the World." *See* Declaration of David Emil, President of Windows, ("Emil Decl.") Ex. B. In November 1994, Baum and his partner Michael Whiteman ("Whiteman") decided to rename the bar attached to that restaurant as "The Greatest Bar on Earth." *See* Deposition of Michael Whiteman, February 25, 1997, ("Whiteman Dep.") at 14, 15, 24, 25; Deposition of David Emil, February 20, 1997, ("Emil Dep.") at 274. Baum and Whiteman are long-term consultants to defendant Windows, and additionally, Baum is an officer, co-owner, manager and developer of Windows. *See* Whiteman Dep. at 8; Transcript of July 3, 1996 Hearing ("Tr.") at 107.

In May 1996, Andrew Freeman, Windows' director of advertising, contacted Barbara Pflughaupt, a publicist for Ringling, and told her that the two would have an opportunity to "work together" in the near future because Windows was about to open a restaurant and bar at the top of the World Trade Center called "The Greatest Bar on Earth." *See* Declaration of Barbara Pflughaupt, part owner of P & F Communications, ("Pflughaupt Decl.") ¶ 3. Pflughaupt immediately reported this conversation to Ringling's corporate counsel Julie Strauss ("Strauss"). *Id.* ¶ 4.

By letter of June 3, 1996, Strauss warned Windows that its proposed use of "The Greatest Bar on Earth" would be a violation of Ringling's rights. *See* Complaint ¶ 21. On June 4, 1996, Strauss sent a follow-up letter requesting that Windows refrain from its proposed use of "The Greatest Bar on Earth." *Id.* By letter of June 13, 1996, Windows' outside trademark counsel responded to Ringling's charge and denied that Windows' Use of "The Greatest Bar on Earth" violated Ringling's rights or was likely to cause any confusion to customers. See Complaint Ex. 8. On June 19, 1996, Windows ordered a Thomson & Thomson trademark search of the mark "The Greatest Show on Earth." See Second Declaration of Theresa

M. Gillis, attorney for Windows, ("Gillis Decl. II") Ex. A; Declaration of James P. Jeffry, attorney for Windows, ("Jeffry Decl.") Ex. B. On June 24, 1996, Ringling filed this suit seeking to immediately enjoin Windows' use of "The Greatest Bar on Earth" and to compel Windows to account for its profits. "The Greatest Bar on Earth" has been open to the public since June 26, 1996. *See* Emil Decl. § 4.

On July 11, 1996, following an evidentiary hearing on July 3, 1996, I denied Ringling's motion for a preliminary injunction prohibiting Windows from using the name "The Greatest Bar on Earth." *See Ringling Bros. v. B.E. Windows,* 937 F.Supp. 204, 206 (S.D.N.Y.1996). The findings from that hearing, as Ringling correctly pointed out in its letter to the Court dated July 29, 1997, were preliminary and do not bind this or any future proceedings.

Windows now contends that its use of "The Greatest Bar on Earth" does not constitute willful infringement, and that because an accounting for profits may only be awarded with respect to profits derived from willful infringement, Ringling's claim for an accounting must be denied. Windows correctly points out that if an accounting is unavailable, the only remaining relief sought by Ringling is injunctive, thereby eliminating the need for a jury trial.

In the alternative, Windows argues that if Ringling is entitled to a trial on the issue of willful infringement, that trial should be to the court because an accounting for profits is a purely equitable remedy.

## II. STANDARD OF REVIEW

■ On a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. See *Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663, 667 (2d Cir. 1996). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986); *Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955 (2d Cir.1996). When, as here, willfulness or state of mind is at issue, summary judgment may still be granted "where only speculative allegations are offered to demonstrate the existence of state of mind after ample opportunity to engage in relevant discovery." *Resource Dev. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 141 (2d Cir.1991).

## III. WILLFUL INFRINGEMENT

 Under the Lanham Act, a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting. *See George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1540 (2d Cir.1992). An accounting is only appropriate when defendant commits "acts intended to cause confusion or deceive prospective purchasers," and should not be awarded where a defendant "deliberately but in good faith used a mark." Restatement (Third) of Unfair Competition § 37 cmt. e (1995) (quoted in *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.* 80 F.3d 749, 754 (2d Cir.1996)); *see also Basch,* 968 F.2d at 1540. "Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel." *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.,* 984 F.2d 567, 575 (2d Cir.1993). For the reasons set forth below, I find that Windows meets the first and second of these alternative standards for a finding of good faith. The mark selected reflects the product's characteristics, *see infra* p. 905, and a trademark search revealed no other use of the mark "The Greatest Bar on Earth." See *infra* p. 904.

Ringling proffers two pieces of evidence which it claims show Windows' bad faith and willful infringement: (1) Windows' failed to conduct a trademark search for "The Greatest Bar on Earth" until one week before the bar opened; and (2) Windows' director of advertising mentioned the possibility of co-promotion of "The Greatest Bar on Earth" with Ringling in a phone call with a Ringling publicist one month before the bar opened.

Ringling relies on two recent Court of Appeals cases for the proposition that Windows' failure to run a trademark search prior to adopting its disputed name constitutes willful ignorance and bad faith. In *Hilfiger,* 80 F.3d at 752, the marks in dispute were a red five pointed star and the name "Star Class." The defendant was unaware of the plaintiff's rights in the "Star Class" mark until after the suit was filed and defendant ran a full trademark search. The Court of Appeals held that the defendant "cannot lay claim to a 'good faith' belief that it was not infringing ... because it neither fully explored others' rights to "Star Class" nor ceased its infringing behavior when it was sued." *Id.* at 754.

In *Sports Authority,* 89 F.3d at 964, the defendant neither consulted with an attorney nor conducted a trademark search before adopting the name "Sports Authority Food, Spirits & Sports." Had the defendant checked, it would have found that the plaintiff owned a service mark for the name "The Sports Authority." *Id.* at 959. The court held that this evidence "does not conclusively point to a finding of either good or bad faith, and this issue, like many intent issues, is best left in the hands of the trier of fact." *Id.* at 964.

Windows' situation is quite different. Both Baum and Whiteman, the creators of the name "The Greatest Bar on Earth," admit in their depositions that they have been familiar with Ringling and its famous mark "The Greatest Show on Earth" since their childhoods. *See* Baum Dep. at 61; Whiteman Dep. at 54. There was no reason for Windows to run a trademark search because its principals already knew that Ringling's mark existed. The search that Windows ultimately conducted the week before the bar opened provided no new information; it merely confirmed what Baum and Whiteman already knew, namely that Ringling owned a different mark. Because the search revealed no other use of the mark "The Greatest Bar on Earth," it is specious to argue that its tardiness proves a lack of good faith.

The comments of Windows' director of advertising Andrew Freeman, suggesting co-promotion of "The Greatest Bar on Earth" to

a Ringling publicist, are also irrelevant. There is ample evidence in the record that Windows' officers were opposed to any such co-promotion, and that Freeman's suggestion was thus unauthorized. First, no evidence suggests that any other Windows' employees even considered co-promotion with Ringling. Second, Baum testified adamantly that he did not and would not promote himself as "the Barnum of the restaurant world" nor would he promote "The Greatest Bar on Earth" as "a three ring circus," as a newspaper article had done. Tr. at 124–25. Third, Windows' president David Emil testified that " 'The Greatest Bar on Earth' should be a sophisticated lounge and restaurant," and that "the suggestion that [Baum] would copy the circus or try to trade on its reputation is offensive and suggests that he has run out of creative innovative genius." Emil Dep. at 275; Emil Decl. ¶ 6.

Nonetheless, assuming, *arguendo,* that Freeman's remarks constituted a genuine effort by Windows to co-promote "The Greatest Bar on Earth" with Ringling, the timing of Freeman's conversation proves that Windows did not willfully intend to capitalize on Ringling's mark. The only way one could infer willful infringement would be if: (1) Windows had suggested co-promotion to Ringling in 1994; (2) Ringling had refused; and (3) Windows then went on to design a similar mark to capitalize on Ringling's name recognition despite Ringling's refusal. But that is not what the evidence shows. Freeman's phone call took place some time in May 1996. Pflughaupt Decl. ¶ 3. Emil testified that Windows had planned to·use the name "The Greatest Bar on Earth" since November 1994. Emil Dep. at 274. In the interceding year and a half, Windows invested over $50,000 designing a moon and stars logo to go along with the title "The Greatest Bar on Earth." Emil Decl. ¶ 8. If Windows really intended to capitalize on Ringling's mark through co-promotion, Windows would have suggested the idea 18 months earlier before spending $50,000 designing its own mark. There is no evidence that any such earlier proposal was made.

The only inference a reasonable trier of fact could draw from Freeman's conversation is that Freeman thought co-promotion with Ringling would be a good idea. An advertising director's last minute thoughts on a publicity gimmick will not support a reasonable inference of willful infringement.

Finally, it is the well-settled law of this circuit that "good faith can be found if a defendant has selected a mark which reflects the product's characteristics." *W.W.W. Pharmaceutical,* 984 F.2d at 575. There is ample, uncontroverted evidence in the record suggesting that the name "The Greatest Bar on Earth" reflects the characteristics of the actual bar. Baum testified:

I have always, always thought of using, where appropriate, and when the opportunity presented, to be able to discuss and create The Greatest Bar on Earth . . . the opportunity to have the greatest bar comes only once in a lifetime and the appropriate opportunity here was to put it in the complex at Windows, high in the sky on the 107th floor with viewing bar all around for some 25 to 30 miles on either side . . .

Tr. at 111–12. Whiteman added:

The name related to the fact that it has an extraordinary view in several directions, that it was going to be a great bar, that there were going to be a lot of things to do there, and that its food is going to reflect cuisines from around the world. And, take it all together, suggested to me that it's The Greatest Bar on Earth.

Whiteman Dep. at 24. Moreover, "The Greatest Bar on Earth" coincides with the names of the other two existing restaurants in the Windows complex—windows on the World and Cellar in the Sky—in its use of prepositions within its title. "The Greatest Bar on Earth" is an appropriate title for Windows' bar, and this alone evidences good faith.

## IV. CONCLUSION

Ringling's evidence cannot support a claim of willful infringement by Windows. Accordingly, Windows' motion for summary judgment dismissing Ringling's claim for an accounting is granted. Because the remaining

relief requested is injunctive, Ringling is not entitled to a trial by jury.

SO ORDERED.